**10-55129**

IN THE

# United States Court of Appeals

## FOR THE NINTH CIRCUIT

———— ◆◆ ————

ROBERT NACHSHIN; DAWN FAIRCHILD, BRIAN GEERS, LAURENCE GERARD,
on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellees*,

—v.—

AOL, LLC, a Delaware Limited Liability Company,

*Defendant-Appellee*.

————————————

DARREN MCKINNEY,

*Objector-Appellant*.

————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA, NO. 09-03568 CAS(PLAx)
(HONORABLE CHRISTINA A. SNYDER, JUDGE)

## BRIEF OF OBJECTOR-APPELLANT DARREN MCKINNEY

THEODORE H. FRANK
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street N.W., No. 23-6
Washington, D.C. 20036
(703) 203-3848
tfrank@gmail.com

*Attorney for Objector-Appellant
Darren McKinney*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ..................................................................... ii

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF ISSUES ......................................................................2

RELEVANT STATUTES.........................................................................4

STATEMENT OF THE CASE..................................................................7

STATEMENT OF THE FACTS................................................................9

SUMMARY OF ARGUMENT ..............................................................10

PRELIMINARY STATEMENT.............................................................12

ARGUMENT ........................................................................................13

I.      *Cy Pres* Distributions Can Create Untenable Conflicts of Interest. ............ 13

II.     The Ninth Circuit Anticipated This Problem in *Six Mexican Workers*, Which Requires Reversal of This Settlement Approval. ........................................ 17

III.    Judge Snyder's Decision to Both Approve the Settlement and Refuse to Recuse Herself Presents Section 455 Problems. ......................................... 20

IV.     Notice to the Class Had a Material Omission.............................................. 25

CONCLUSION ....................................................................................29

STATEMENT OF RELATED CASES ..................................................31

# TABLE OF AUTHORITIES

## CASES

*American Isuzu Motors v. Ntsebeza*,
128 S. Ct. 2424 (2008)..................................................................24

*Babbitt v. Sweet Home Chapter, Communities for Great Ore.*,
515 U.S. 687 (1995) ...................................................................22

*Caperton v. AT Massey Coal Co.*,
129 S. Ct. 2252 (2010)..................................................................25

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990) ...............................................................3, 21

*Daar v. Yellow Cab*,
433 P.2d 732 (Cal. 1967).............................................................15

*Devlin v. Scardeletti*,
536 U.S. 1 (2002)....................................................................2, 22

*Diamond Chemical Co. v. Akzo Nobel Chemicals BV*,
517 F. Supp. 2d 212 (D.D.C. 2007)..............................................17

*Duncan v. Walker*,
533 U.S. 167 (2001) ....................................................................22

*Eisen v. Carlisle & Jacquelin*,
479 F.2d 1005 (2d Cir. 1973),
*vacated on other grounds*, 417 U.S. 156 (1974) ..........................15

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ..............................................................15, 26

*In re Microsoft Corp. Antitrust Litigation*,
185 F. Supp. 2d 519 (D. Md. 2002)...............................................16

*Jackson v. Phillips*,
96 Mass. 539 (1867) ....................................................................14

*Johnson v. Columbia Properties Anchorage, LP,*
  437 F.3d 894 (9th Cir. 2006) ...........................................................................1

*Molski v. Gleich,*
  318 F.3d 937 (9th Cir. 2003) ............................................................4, 28, 29

*Mullane v. Central Hanover Bank & Trust Co.,*
  339 U.S. 306 (1950) .......................................................................................26

*Murray v. GMAC,*
  434 F.3d 948 (7th Cir. 2006) ........................................................................27

*Pullman-Standard v. Swint,*
  456 U. S. 273 (1982) ..............................................................................3, 21

*Rodriguez v. West Publishing Co.,*
  563 F.3d 948 (9th Cir. 2009) ...............................................................27-29

*Six Mexican Workers v. Arizona Citrus Growers,*
  904 F.2d 1301 (9th Cir. 1990) ........................................................ *passim*

*Sun Printing & Publishing Association v. Edwards,*
  194 U.S. 377 (1904) .......................................................................................1

*Torrisi v. Tucson Elec. Power Co.,*
  8 F.3d 1370 (9th Cir. 1993) ...........................................................................4

*United States v. Wilkerson,*
  208 F.3d 794 (9th Cir. 2000) ....................................................................4, 24

*Yokoyama v. Midland Nat'l Life Ins. Co.,*
  594 F.3d 1087 (9th Cir. 2010) ................................................................3, 21

## STATUTES AND FEDERAL RULES

28 U.S.C. § 1 ...................................................................................................24

28 U.S.C. § 455 .......................................................................3-5, 21-25, 30

28 U.S.C. § 455(a) ..........................................................................................24

28 U.S.C. § 455(b) ................................................................23

28 U.S.C. § 455(b)(4) ...................................................... 21-22

28 U.S.C. § 455(b)(5)(iii) .....................................................21

28 U.S.C. § 455(d)(1) ...........................................................21

28 U.S.C. § 455(d)(4) ...................................................... 21-22

28 U.S.C. § 455(d)(4)(ii).......................................................21

28 U.S.C. § 1291 .....................................................................2

28 U.S.C. § 1332(d) ................................................................1

28 U.S.C. § 1332(d)(2) ...........................................................1

28 U.S.C. § 1332(d)(2)(A) ................................................. 1-2

28 U.S.C. § 1712 ............................................................ 15-16

28 U.S.C. § 2042 ...................................................... 5-6, 19, 30

Fed. R. App. 4(a) ...................................................................2

Fed. R. Civ. Proc. 23 ................................................. 1, 6-7, 15

Fed. R. Civ. Proc. 23(a)(4) ............................................ 27-28

Fed. R. Civ. Proc. 23(b)(3) ...................................................9

Fed. R. Civ. Proc. 23(c)(2)(B) .........................................4, 26

Fed. R. Civ. Proc. 23(e) ........................................................9

Fed. R. Civ. Proc. 23(e)(2)...................................................21

Fed. R. Civ. Proc. 23(e)(3)...................................................29

Fed. R. Civ. Proc. 58 .............................................................2

U.S. Const. Art. III................................................................15

# OTHER AUTHORITIES

Bronstad, Amanda, *Cy pres awards under scrutiny*,
NAT'L L. J. (Aug. 11, 2008) (available at http://is.gd/dyFk0-) ............... 11-12

Farmer, Susan Beth, *More Lessons From the Laboratories: Cy Pres Distributions in Parens Patriae Antitrust Actions Brought by State Attorneys General,*
68 FORDHAM L. REV. 361 (1999) ................................................................14

Federal Judicial Center, RECUSAL: ANALYSIS OF CASE LAW UNDER 28 U.S.C.
§§ 455 & 144 (2002) ...................................................................................23

Fisch, Edith L., THE CY PRES DOCTRINE IN THE UNITED STATES (1950).................14

Fitzpatrick, Brian, *The End of Objector Blackmail?*,
62 VAND. L. REV. 1623 (2009).....................................................................13

Frank, Theodore H., *Cy Pres Settlements*,
CLASS ACTION WATCH (March 2008)
(available at http://is.gd/dyR5L-) .................................................................16

Garner, Bryan A., BLACK'S LAW DICTIONARY (7th ed. 1999)................................14

Koppel, Nathan, *Proposed Facebook Settlement Comes Under Fire*,
WALL ST. J. (Mar. 2, 2010) (available at http://is.gd/dyl7A-).......................12

Liptak, Adam, *Doling Out Other People's Money*,
N.Y. TIMES (Nov. 26, 2007) (available at
http://www.nytimes.com/2007/11/26/washington/26bar.html) .. 11, 17-18, 29

Morgan, Peter W. & Glenn H. Reynolds,
THE APPEARANCE OF IMPROPRIETY (2002) ....................................................25

Posner, Richard, ECONOMIC ANALYSIS OF LAW (4th ed. 1992) ..............................14

Redish, Martin H., *et al.*, *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*,
62 FLA. L. REV. __ (forthcoming 2010) (available at SSRN:
http://ssrn.com/abstract=1485047) ............................................. 11, 15-17, 25

Stewart R. Shepherd, Comment, *Damage Distribution in Class Actions: The Cy Pres Remedy*,
39 U. Chi. L. Rev. 448 (1972) ...................................................................15

Uniform Trust Code § 413(a) ........................................................... 14-15

Yospe, Sam, *Cy Pres Distributions in Class Action Settlements*,
2009 Columbia Bus. L. Rev. 1014 (available at SSRN:
http://ssrn.com/abstract=1492105) ................................................................11

Zahorsky, Rachel M., *Unsettling Advocate*, ABA J. (Apr. 2010) ..........................13

## JURISDICTIONAL STATEMENT

On information and belief, the district court had diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the case is a class action filed under Fed. R. Civ. Proc. 23 involving allegations of violations of state consumer fraud law, at least one member of the proposed class is a citizen of a state different from one defendant, the number of members of all proposed plaintiff classes in the aggregate is at least 100, the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs, and no statutory exception to 28 U.S.C. § 1332(d)(2) applies. *See* 28 U.S.C. § 1332(d).

The putative class includes citizens of all fifty states and the District of Columbia. (Excerpts of Record ("ER") 46 ¶ 2.) On information and belief, named plaintiff Dawn Fairchild is a citizen of the state of California. The plaintiffs allege only that Ms. Fairchild is a "resident" of the state of California (Excerpts of Record ("ER") 46 ¶ 2), which is necessary, but not sufficient, to establish citizenship. *Sun Printing & Publishing Association v. Edwards*, 194 U.S. 377, 382-83 (1904).

Moreover, the plaintiffs' complaint failed to allege the citizenship of defendant AOL, LLC, which is a limited liability corporation that has the citizenship of all of its owners. *Johnson v. Columbia Properties Anchorage, LP,* 437 F.3d 894, 899-900 (9th Cir. 2006). (ER 46 ¶ 4.) Neither the defendants nor the district court addressed this issue. Moreover, it appears that AOL, LLC,

transferred all of its assets in 2009, but none of the parties formally substituted its successor, AOL Inc., into the litigation.  Objector McKinney thus cannot guarantee that the district court had jurisdiction until the parties weigh in on the subject, but believes it more likely than not that there was § 1332(d)(2)(A) diversity jurisdiction; on information and belief, AOL, LLC, did not have citizenship in all fifty states and the District of Columbia.  AOL Inc. is a Delaware corporation with its principal place of business in New York.

If the district court did have jurisdiction, then this court has jurisdiction. The court's final judgment pursuant to Fed. R. Civ. Proc. 58 issued on December 31, 2009, and the court awarded attorneys' fees in an order dated January 4, 2010. (ER 1-8.)  Appellants filed a notice of appeal of both orders on January 26, 2010, which is timely pursuant to Fed. R. App. 4(a).  (ER 130-134.)

This court has appellate jurisdiction because this is a timely-filed appeal from a final judgment under 28 U.S.C. § 1291.  Objector Darren McKinney has standing to appeal a final approval of a class action settlement without the need to formally intervene in the case.  *Devlin v. Scardeletti*, 536 U.S. 1 (2002).


### STATEMENT OF ISSUES

1.    A district court is to reject a *cy pres* award "when the proposed distribution fails to provide the 'next best' distribution" to class members.  *Six*

*Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990). Did the district court err as a matter of law when it approved *cy pres* distribution on behalf of a nationwide class of AOL users to the Legal Aid Foundation of Los Angeles; the Federal Judicial Center Foundation; and the Boys and Girls Club of Los Angeles and Santa Monica?

**Standard of Review**:  A district court decision to approve a proposed *cy pres* distribution is reviewed for abuse of discretion.  *Id.* at 1309 (setting aside court's *cy pres* distribution as abuse of discretion where the "plan does not adequately target the plaintiff class").  A district court decision that fails to apply the correct standard of law is an abuse of discretion.  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990) (discussing abuse of discretion standard) (quoting *Pullman-Standard v. Swint*, 456 U. S. 273, 287 (1982)).  *Accord Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1091 (9th Cir. 2010).

2.    Under 28 U.S.C. § 455, a judge shall recuse herself when her "impartiality might reasonably be questioned" or when her spouse is "known by the judge to have an interest that could be substantially affected by the outcome of the proceeding."  Does § 455 require a judge to recuse herself for a fairness hearing adjudicating the fairness of a settlement that is to make a *cy pres* payment to a charity on which her husband sits on the board?

3

**Standard of Review**:  The decision of a judge not to recuse herself is reviewed for abuse of discretion.  *United States v. Wilkerson*, 208 F.3d 794, 797 (9th Cir. 2000).

3.     Notice to a class of a class action settlement must be the "best notice that is practicable under the circumstances."  Was class notice sufficient in this case where neither the class nor the court was informed that a private secondary school to which settlement money was directed, the New Roads School of Santa Monica, was the employer of at least one of the named plaintiffs?

**Standard of Review**:  The Ninth Circuit reviews *de novo* whether notice satisfies due process.  *Molski v. Gleich*, 318 F.3d 937, 951 (9th Cir. 2003); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993).

## RELEVANT STATUTES

**28 U.S.C. § 455 : Disqualification of justice, judge, or magistrate judge**

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

…

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

…

    (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding; …

(d) For the purposes of this section the following words or phrases shall have the meaning indicated:

  (1) "proceeding" includes pretrial, trial, appellate review, or other stages of litigation;

…

  (4) "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party, except that:

…

    (ii) An office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the organization; …

## § 2042. Withdrawal

No money deposited under section 2041 of this title shall be withdrawn except by order of court.

In every case in which the right to withdraw money deposited in court under section 2041 has been adjudicated or is not in dispute and such money has remained so deposited for at least five years unclaimed by the person entitled thereto, such court shall cause such money to be deposited in the Treasury in the name and to the credit of the United States. Any claimant entitled to any such money may, on petition to the court and upon notice to the United States attorney and full proof of the right thereto, obtain an order directing payment to him.

**Federal Rule of Civil Procedure 23. Class Actions.**

    **(a)**     **Prerequisites.**

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

    …

        (4)    the representative parties will fairly and adequately protect the interests of the class.

    …

    **(c)**     **Certification Order; Notice to Class Members; Judgment; Issues Classes; Subclasses.**

    …

        (2)    **Notice.**

            ...

            (B) *For (b)(3) Classes.* For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. …

    …

    **(e)**     **Settlement, Voluntary Dismissal, or Compromise.**

The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval.  The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

    …

(2)   If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate. …

## STATEMENT OF THE CASE

On May 19, 2009, Rande Bronster and Robert Nachsin brought a putative class action against AOL LLC on behalf of a nationwide class of paid AOL subscribers over AOL's practice of inserting third-party advertising in emails sent in its free email service.   (Docket No. 1.)   Within a month, the attorneys voluntarily dismissed Bronster from the case, filed an amended complaint with new representative plaintiffs, and moved for preliminary approval of a settlement binding a class of "all current AOL members," tens of millions of users, paid and unpaid, of AOL email services.  (Docket Nos. 7, 8, 9; ER 4 ¶ 3.)

The proposed settlement paid zero dollars to the class and $320,000 to the attorneys; AOL would make a *cy pres* payment of $25,000 each to (1) the Legal Aid Foundation of Los Angeles; (2) the Federal Judicial Center Foundation; and (3) the Boys and Girls Club of Los Angeles and Santa Monica.  (ER 86-87 ¶ 23.) Ostensibly in lieu of payment to the representative plaintiffs, AOL would donate a total of $35,000 in charity to the New Roads School of Santa Monica, the Oklahoma Indian Legal Services, and the Friars Foundation.  (ER 87 ¶ 24.)  But in requesting preliminary approval the parties neither disclosed to the court nor in notice to the class that at least one of the plaintiffs had a financial interest in at

7

least one of the charities in question: named plaintiff Dawn Fairchild is the associate director of development of the New Roads School of Santa Monica. (ER 127.)  The court did not inquire into the relationship between the other named plaintiffs and the other two charities.

Class member Darren McKinney objected, *inter alia*, on the grounds that the *cy pres* awards were unrelated to the nationwide class and thus failed to meet Ninth Circuit standards and that the notice indicated that representative plaintiff payments were going to charity when in fact at least half was going to one of the plaintiffs' employers. (ER 122-23.)

At the fairness hearing, Judge Snyder disclosed that her husband was on the board of the Legal Aid Foundation of Los Angeles, but declined to recuse herself on the grounds that she "had no involvement in picking the charities" and that the amounts involved were "exceedingly small." (ER 17, 43-44.) The court acknowledged that the payment to Ms. Fairchild's employer "may be an issue" (ER 18), but ultimately held that the *cy pres* was appropriate because "I don't believe the charities that have been chosen are inappropriate or out of line with other class actions settlements that I have seen approved in this court and in other courts." (ER 40-41.) The court did not formally address the Ninth Circuit standard for *cy pres* awards at the fairness hearing or in its final judgment. The court found, without giving reasoning for rejecting Mr. McKinney's objection, that the notice

8

"met all applicable requirements of Due Process and federal law." (ER 6.)  The court certified the class under Fed. R. Civ. Proc. 23(b)(3) and approved the settlement under Fed. R. Civ. Proc. 23(e). (ER 4-5.)  The request for attorneys' fees was granted in full. (ER 1.)

This timely appeal followed.  (ER 130-134.)

## STATEMENT OF THE FACTS

Under the parties' settlement of the claims of a nationwide class of "all current AOL members," AOL would make a *cy pres* payment of $25,000 each to (1) the Legal Aid Foundation of Los Angeles; (2) the Federal Judicial Center Foundation; and (3) the Boys and Girls Club of Los Angeles and Santa Monica. (ER 4 ¶ 3, 86-87 ¶ 23.)  Ostensibly in lieu of payment to the representative plaintiffs, AOL would donate a total of $35,000 in charity to the New Roads School of Santa Monica, the Oklahoma Indian Legal Services, and the Friars Foundation.  (ER 87 ¶ 24.)

The Legal Aid Foundation of Los Angeles, the Boys and Girls Club of Los Angeles and Santa Monica, the New Roads School of Santa Monica, and the Oklahoma Indian Legal Services are charities that focus on their local communities.  (ER 123.)  The parties made no argument and introduced no evidence showing a relationship between the nationwide class and any of the recipients of *cy pres* settlement money.

9

Named plaintiff Dawn Fairchild is the associate director of development of the New Roads School of Santa Monica. (ER 127.) The notice to the class simply said that "AOL shall make donations to several different charities totaling $110,000"; it gave no indication that any of the charities were related to the plaintiff. (ER 109.) Neither the settlement nor any of the parties' filings disclosed Ms. Fairchild's relationship with the charity. (*E.g.*, ER 87.) The court did not inquire, and the parties did not disclose, whether there was any relationship between the other named plaintiffs and the other charities.

Judge Snyder's husband sits on the board of another one of the *cy pres* recipients, the Legal Aid Foundation of Los Angeles. (ER 17.)

No one contests that Objector Darren McKinney is a member of the class with standing to object. (*Compare* ER 72 *with* ER 14 (questioning standing of another objector).)

## SUMMARY OF ARGUMENT

This appeal presents a straightforward application of the Ninth Circuit precedent *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990)—a precedent that the district court entirely failed to apply. For a *cy pres* award to a third party to be permissible it must actually ***be*** "*cy pres*"—as near as possible to actual class recovery. *Id.* at 1308. Here, there was a nationwide class of tens of millions of AOL members allegedly victimized by AOL practices,

but the vast majority of the *cy pres* distribution went to local charities in the Los Angeles and Oklahoma areas; all of the *cy pres* was entirely unrelated to the class and unrelated to the claims of the case.

The potential of *cy pres* to create conflicts of interest and ethical dilemmas for the judiciary have garnered increasing attention in recent years. *See, e.g.*, Adam Liptak, *Doling Out Other People's Money*, N.Y. TIMES (Nov. 26, 2007) (available at http://www.nytimes.com/2007/11/26/washington/26bar.html); Martin H. Redish, *et al.*, *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 FLA. L. REV. __ (forthcoming 2010) (available at SSRN: http://ssrn.com/abstract=1485047); Sam Yospe, *Cy Pres Distributions in Class Action Settlements*, 2009 COLUMBIA BUS. L. REV. 1014 (available at SSRN: http://ssrn.com/abstract=1492105); Amanda Bronstad, *Cy pres awards under scrutiny*, NAT'L L. J. (Aug. 11, 2008) (available at http://is.gd/dyFk0-). If courts are going to countenance *cy pres* distributions in class actions settlements at all, such distributions must be strictly tethered to the standard of class benefit, lest *cy pres* become a slush fund for plaintiffs, defendants, attorneys, and judges that creates the appearance of impropriety—or worse, actual impropriety.

The problems of potential conflicts of interest are not just a hypothetical concern in the case at bar. Neither the court nor the class was informed of the

11

conflict of interest that one of the plaintiffs was the assistant director of development for one of the *cy pres* recipients. And yet still another *cy pres* recipient was a local charity where the spouse of the district court judge sits on the board. It is not exaggerating to say that this case is a poster child for the problem of *cy pres* abuse: indeed, in a story on the issue, the *Wall Street Journal* singled out *the very settlement in this case* as an example. Nathan Koppel, *Proposed Facebook Settlement Comes Under Fire*, WALL ST. J. (Mar. 2, 2010) (available at http://is.gd/dyl7A-).

For both precedential and sound public-policy reasons, this court should reverse the approval of the proposed class action settlement as an abuse of discretion.

## PRELIMINARY STATEMENT

The Center for Class Action Fairness, founded by legal academic and attorney Theodore H. Frank in 2009, is a non-profit public-interest law firm that represents consumers pro bono as part of the 501(c)(3), DonorsTrust. A number of "professional objectors" are for-profit attorneys that attempt to or threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the attorneys' fees; thus, some courts presume that the objector's legal arguments are not made in good faith. *Cf.* Brian Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009).

But this is not the business model of the Center for Class Action Fairness. While the Center focuses on bringing objections to unfair class action settlements, it makes no effort to engage in *quid pro quo* settlements to extort attorneys, and has never settled an objection. The Center analyzes complaints from consumers aggrieved by class action settlement notices to determine whether a settlement is objectionable under the law because the settlement favors attorneys at the expense of class members.  The Center's litigation on behalf of consumers has been covered by the *ABA Journal*, *Forbes*, and the *National Law Journal*, among others. *See, e.g.*, Rachel M. Zahorsky, *Unsettling Advocate*, ABA J. (Apr. 2010).

## ARGUMENT

### I.   *Cy Pres* Distributions Can Create Untenable Conflicts of Interest.

The idea of *cy pres* (from the French *cy pres comme possible*—"as near as possible") originates in the trust context, where courts would reinterpret the terms of a charitable trust when literal application of those terms would otherwise result in the dissolution of the trust because of impossibility or illegality. Susan Beth Farmer, *More Lessons From the Laboratories: Cy Pres Distributions in Parens Patriae Antitrust Actions Brought by State Attorneys General,* 68 FORDHAM L. REV. 361, 391-93 (1999); RICHARD POSNER, ECONOMIC ANALYSIS OF LAW 509-10 (4th ed. 1992); BRYAN A. GARNER, BLACK'S LAW DICTIONARY 392 (7th ed. 1999).

"Justification for the use of the doctrine [in the middle ages] was laid on the shoulders of the donor, the idea being since the object of the testator in donating the money to charity was to obtain an advantageous position in the kingdom of heaven, he ought not to be frustrated in this desire because of an unexpected or unforeseen failure." *Id*. (*quoting* EDITH L. FISCH, THE CY PRES DOCTRINE IN THE UNITED STATES 4 (1950)). The classic example of *cy pres* was a 19th-century case where a court repurposed a trust that had been created to abolish slavery in the United States to instead provide charity to poor African-Americans. *Jackson v. Phillips*, 96 Mass. 539 (1867). Courts do not have *carte blanche* to modify trusts under *cy pres* doctrine; they must do so in a "manner consistent with the settlor's charitable purposes." Uniform Trust Code § 413(a).

In 1972, a student comment in the *University of Chicago Law Review* suggested the use of *cy pres* in the context of class actions with large classes and unclaimed remainders of funds to avoid "unjust enrichment" through reversion to a defendant found to have violated the class's rights. Stewart R. Shepherd, Comment, *Damage Distribution in Class Actions: The Cy Pres Remedy*, 39 U. CHI. L. REV. 448 (1972). The California Supreme Court had adopted a "fluid recovery" mechanism in class action settlements in 1967, to distribute proceeds to a "next best" class of consumers who might differ from, but likely overlapped with, the class of consumers who had alleged injury but could not feasibly engage in a

claims process.  *Daar v. Yellow Cab*, 433 P.2d 732 (Cal. 1967).  *But see Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005, 1017 (2d Cir. 1973), *vacated on other grounds*, 417 U.S. 156 (1974) (holding that "fluid recovery" was not permitted by Fed. R. Civ. Proc. 23, and that if it were, it would be an unconstitutional violation of due process).

Over time, parties to class action settlements have attempted to characterize any third-party distribution as *cy pres*, divorcing it from the idea of benefiting a class that has participated in an Article III adversary process; use of the procedure has "accelerated" in the last decade.  *See* Redish, *supra*.  In the wake of the Class Action Fairness Act's requirement of additional scrutiny of coupon settlements, 28 U.S.C. § 1712, parties have increasingly resorted to *cy pres* as a means of exaggerating the value of a settlement to rationalize oversized attorneys' fees.  Theodore H. Frank, *Cy Pres Settlements*, CLASS ACTION WATCH (March 2008) (available at http://is.gd/dyR5L-).

When *cy pres* distributions are unmoored from class recovery or *ex ante* legislative or judicial standards, they effectively become a slush fund.  For example, a defendant could steer distributions to a favored charity with which it already does business, or use the *cy pres* distribution to achieve business ends.  In a famous example, Microsoft sought to donate numerous licenses for Windows software to schools as part of an antitrust class action settlement, essentially using

the *cy pres* as a marketing tool that would have frozen out its competitors. *In re Microsoft Corp. Antitrust Litigation*, 185 F. Supp. 2d 519 (D. Md. 2002).

If the *cy pres* distribution is related to plaintiffs' counsel, such as an attorney's *alma mater*, it would result in class counsel being double-compensated: the attorney indirectly benefits both from the *cy pres* distribution, and then makes a claim for attorneys' fees based upon the size of the *cy pres*. *See* Frank, *supra*; *cf. also* Redish, *supra* (*cy pres* awards "can also increase the likelihood and absolute amount of attorneys' fees awarded without directly, or even indirectly, benefitting the plaintiff"). Permitting class counsel to collect attorneys' fees based on unmoored *cy pres* awards "threatens to undermine the due process interests of absent class members by disincentivizing the class attorneys in their efforts to assure [classwide] compensation of victims of the defendant's unlawful behavior." Redish, *supra*. This would be a breach of the class counsel's fiduciary duty to put her clients' interests ahead of her own. *But cf. Diamond Chemical Co. v. Akzo Nobel Chemicals BV*, 517 F. Supp. 2d 212 (D.D.C. 2007) (evaluating proposed *cy pres* distribution to lead counsel's *alma mater* where neither the parties nor the court raised the issue of conflict of interest).

When the charitable distribution is related to the judge, or left entirely to the judge's discretion, the ethical problems and conflicts of interest multiply. Class action settlements require judicial approval: one can readily envision a scenario

16

where a judge looks more favorably upon a settlement that provides money for a judge's preferred charity than one that does not. Even if a judge divorces herself from such considerations, the parties may still believe that it would increase the chances of settlement approval to throw some money to a charity associated with a judge.

Moreover, charities that know that a judge has discretionary funds to distribute can—and do—lobby judges to choose them, blurring the appropriate role of the judiciary. "[A]llowing judges to choose how to spend other people's money 'is not a true judicial function and can lead to abuses.'" Liptak, *supra* (quoting former federal judge David F. Levi); *see also id.* (quoting Judge Levi as saying "judges felt that there was something unseemly about this system" where "groups would solicit [judges] for consideration as recipients of *cy pres* awards"). As tempting as it is to permit judges to play Santa Claus with settlement money, Congress has not given courts this authority, and the judiciary should not seize this ethically and constitutionally problematic power for themselves.

## II. The Ninth Circuit Anticipated This Problem in *Six Mexican Workers*, Which Requires Reversal of This Settlement Approval.

Years before academics began to question *cy pres*, the Ninth Circuit recognized the problem. In *Six Mexican Workers*, a district court found that Arizona Citrus Growers had violated the Farm Labor Contractor Registration Act

17

with respect to a class of 1349 undocumented Mexican workers, and awarded $1.8 million in damages.  904 F.2d at 1303-04.  The court ordered "any unclaimed funds be distributed through a *cy pres* award to the Inter-American Fund for indirect distribution in Mexico."  *Id.* at 1304.

On appeal, the Ninth Circuit remanded.  "The district court's proposal benefits a group far too remote from the plaintiff class."  *Id.* at 1308.  *Cy pres* "will be rejected when the proposed distribution fails to provide the 'next best' distribution."  *Id.*  Any such distribution must "adequately target the plaintiff class."  *Id.* at 1309.  "The district court's plan permits distribution to areas where the class members may live, but there is no reasonable certainty that any member will be benefited."  *Id.* at 1308.

While the *Six Mexican Workers* court also expressed concern with the track record of the Inter-American Fund, *id.* at 1308, this was not the dispositive issue. The Ninth Circuit insisted that the need for *cy pres* to "effectuate… the interests of silent class members" was non-negotiable: "If the district court is unable to develop an appropriate *cy pres* distribution, or finds *cy pres* no longer appropriate, it should consider escheating the funds pursuant to 28 U.S.C. § 2042."  *Id.* at 1309.

Though *Six Mexican Workers* did not address the issues of possible conflicts of interest, its decision requiring *cy pres* to "target" the class is good public policy. Strict insistence that a *cy pres* distribution conform to the *cy pres* standards of trust

18

law and truly be the "next best" distribution has the effect of eliminating or constraining discretionary decisions that create the conflicts of interest that make *cy pres* awards in class actions ethically problematic.

In the case before the Ninth Circuit today, the proposed *cy pres* award fails to meet the *Six Mexican Workers* standard: it is even more "remote from the plaintiff class" than the proposed Mexican distribution. Not a one of the Legal Aid Foundation of Los Angeles; the Federal Judicial Center Foundation; the Boys and Girls Club of Los Angeles and Santa Monica; the New Roads School of Santa Monica; the Oklahoma Indian Legal Services; or the Friars Foundation has anything to do with a nationwide class of AOL members allegedly harmed by the inclusion of advertising in their email service, nor do any of the parties attempt to claim otherwise.

The distribution in *Six Mexican Workers* was geographically targeted to "areas where the class members may live"; in contrast, the distribution in *AOL*, a case with a nationwide class, has been targeted to areas where the judge lives and some of the representative plaintiffs live and/or work. Not only is there no geographic relationship between the *cy pres* and the class, there is not even a pretense that the charitable donations are related to the cause of action.

It would be an abuse of discretion for a court to have made the finding that the *cy pres* here "adequately targets the plaintiff class"—but the district court did

not even make the finding that *Six Mexican Workers* requires.   Rather, the court stated "I don't believe the charities that have been chosen are inappropriate or out of line with other class action settlements that I have seen approved in this court and in other courts." (ER 40-41.)  Perhaps district courts in the Ninth Circuit have been regularly disregarding Ninth Circuit precedent and sound public policy when making *cy pres* distributions.   But the Ninth Circuit has never disavowed *Six Mexican Workers*, and the parties below provided no reason for the court to do so.

A district court decision that fails to apply the correct standard of law is an abuse of discretion.  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990) (discussing abuse of discretion standard) (quoting *Pullman-Standard v. Swint*, 456 U. S. 273, 287 (1982)). *Accord Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1091 (9th Cir. 2010).

The district court decision to approve a settlement that contained *cy pres* distribution entirely unrelated to the class was a violation of Fed. R. Civ. Proc. 23(e)(2) and *Six Mexican Workers*.  This court must reverse.

## III.    Judge Snyder's Decision to Both Approve the Settlement and Refuse to Recuse Herself Presents Section 455 Problems.

A judge "shall disqualify [herself]" when her spouse "has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding."  28

U.S.C. §§ 455(b)(4), (5)(iii).   A "financial interest" includes "a relationship as director, adviser, or other active participant in the affairs of a party."   28 U.S.C. § 455(d)(4).[1]  The fairness hearing was a "proceeding."  28 U.S.C. § 455(d)(1).

In this case, Judge Snyder's spouse is on the board of one of the *cy pres* recipients, the Legal Aid Foundation of Los Angeles ("LAFLA").  (ER 17.)  Once the parties chose to make LAFLA a *cy pres* recipient, Judge Snyder's spouse acquired a financial interest in the subject matter in controversy.

To a certain extent, the statute is ambiguously drafted: 28 U.S.C. § 455(b)(4) requires disqualification where there is a "financial interest in the subject matter in controversy *or* in a party to the proceeding" (emphasis added), but "financial interest" is defined only in terms of "the affairs of a party."   There appears to be no precedent whether a *cy pres* recipient that could financially benefit from an approval of a class action settlement is a "party to the proceeding" under (b)(4) or a "party" under (d)(4). One might argue that a § 455 "party" in a class action settlement fairness hearing is limited to the named parties, and perhaps the unnamed class members, and thus Judge Snyder's spouse did not have a "financial interest."  *Cf. Devlin, supra* (unnamed class member is a "party" for purposes of

---

[1] 28 U.S.C. § 455(d)(4)(ii) states that "An office in an educational, religious, charitable, fraternal, or civic organization is not a 'financial interest' in securities held by the organization."   This subsection merely means that an officer in a charity is not disqualified from cases involving securities held by the charity, not that an office in a charity is not a financial interest.

appeal, but not for all purposes).  But that reading would be implausible, because it would mean that "financial interest in the subject matter in controversy" was mere surplusage.  *Babbitt v. Sweet Home Chapter, Communities for Great Ore.*, 515 U.S. 687, 698 (1995) (discussing "reluctance to treat statutory terms as surplusage"); *accord Duncan v. Walker*, 533 U.S. 167, 174 (2001).

But this court need not resolve this ambiguity: at a minimum, Judge Snyder's spouse had an "interest that could be substantially affected by the outcome of the proceeding."

The court below declined recusal on the grounds that the amounts involved—$25,000—were "exceedingly small."  (ER 43-44.)  But that is irrelevant under 28 U.S.C. § 455(b), where, for better or worse, a single dollar of direct financial interest is disqualifying.  FEDERAL JUDICIAL CENTER, RECUSAL: ANALYSIS OF CASE LAW UNDER 28 U.S.C. §§ 455 & 144 at 10 (2002) ("apart from such exemptions, even the smallest financial interest (*e.g.*, ownership of a single share of stock) requires recusal").

The court's other ground for declining recusal, that it "had no involvement in picking the charities," (ER 43-44), cuts two ways.  Certainly, this Court should be reluctant to establish a disqualification rule that could be gamed by the attorneys, since that could result in judge-shopping.  One could envision a remote scenario where parties wishing to rid themselves of a particular judge collude to

22

have that judge disqualified by naming a *cy pres* recipient related to the judge. But, given that litigation is usually a zero-sum game, it would be exceedingly rare for **both** parties to wish to switch judges. Moreover, § 455 already requires disqualification in far more common scenarios where parties' attorneys can game the system, such as hiring a relative of the judge as local counsel or a shotgun complaint naming so many corporate defendants that the Supreme Court cannot obtain a quorum under 28 U.S.C. § 1. *E.g.*, *American Isuzu Motors v. Ntsebeza*, 128 S. Ct. 2424 (2008). Thus, the fact that parties' mid-litigation decisions might affect disqualification decisions is not dispositive.

Indeed, the potential conflict of interest arising from the rule where a judge does not disqualify herself when the parties name a related *cy pres* recipient demonstrates the problem. Even when the judge does not "pick[] the charities," the judge is making a decision whether to approve the settlement. If the judge has a stake in that decision, he or she might give short shrift to the interests of unnamed class members. Even when, as Judge Snyder claims here, the presence of the related *cy pres* recipient does not have an influence on the court's decision, the parties may feel tacitly pressured to include a charity that the judge prefers—or to exclude a charity that the judge dislikes. In any event, for better or worse, § 455 does not ask whether the judge can rise above an actual or perceived conflict of interest; where there is a financial interest or a § 455(a) reasonable questioning of

impartiality, the judge "shall" disqualify herself.  The test is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Wilkerson*, 208 F.3d at 797.  The decision is mandatory, not discretionary, even if reviewed for abuse of discretion.

Objector wishes to make clear he is not accusing the district court of actual wrongdoing beyond abuse of discretion and failing to apply the *Six Mexican Workers* standard.   Objector is reluctant to raise the issue of recusal; an "appearance of impropriety" standard can all too frequently become an appearance-of-appearance of impropriety standard. *Cf.* PETER W. MORGAN & GLENN H. REYNOLDS, THE APPEARANCE OF IMPROPRIETY (2002); *Caperton v. AT Massey Coal Co.*, 129 S. Ct. 2252, 2267 *ff.* (2010) (Roberts, C.J., dissenting).  But Congress's command in 28 U.S.C. § 455 does not give the flexibility for courts to approve class action settlements providing material benefits to third parties related to the judge.

The § 455 problems in this case suggest that the ethical problems presented by *cy pres* distributions may make them entirely unworkable.  At a minimum, they give all the more reason for this Court to continue to strictly enforce the *Six Mexican Workers* standard and forbid *cy pres* that does not directly benefit unnamed class members.  But, if for some reason, this Court were to both abrogate *Six Mexican Workers* and give district courts unfettered (and perhaps, as per

24

Redish, *supra*, unconstitutional) discretion to approve *cy pres* distributions unrelated to class benefit, then under § 455 that discretion must be exercised by a judge whose family members do not have a financial interest in the *cy pres* recipient.

## IV.     Notice to the Class Had a Material Omission.

The class notice stated that "AOL shall make donations to several different charities totaling $110,000"; it did not disclose any incentive payments to representative plaintiffs.  (ER 109.)  Even if a class member investigated the underlying settlement or docket, the only detail that the materials the parties submitted to the court indicated that the New Roads School of Santa Monica would receive $17,500.  (ER 87.)

But in fact, named plaintiff Dawn Fairchild is the associate director of development of the New Roads School of Santa Monica. (ER 127.)  Ms. Fairchild does not just merely work for New Roads, she has fundraising responsibilities there.   She thus directly benefits from what was characterized as $17,500 of charity.

Class members are entitled to the "best notice practicable under the circumstances."  Fed. R. Civ. Proc. 23(c)(2)(B).  The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *cf. Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-175 (1974).

The notice here failed that standard. Ms. Fairchild's conflict of interest was not only hidden from the class, the class was told that there was no payments to the class representatives. If class members were aware of the disproportionate degree to which Ms. Fairchild benefited from the settlement—what was effectively a $17,500 incentive payment for a case that lasted a month; where there is no indication she personally participated in any discovery; and where the unnamed class members received no pecuniary benefit—they may have wanted to object to the apparent lack of Rule 23(a)(4) adequacy. "An absence of material conflicts of interest between the named plaintiffs and their counsel with other class members is central to adequacy and, in turn, to due process for absent members of the class." *Rodriguez v. West Publishing Co.*, 563 F.3d 948, 959 (9th Cir. 2009). "[F]ailing to disclose" the material aspects of requested incentive payments "deprive[es] the court, and the class, of the safeguard of informed judicial consideration of the adequacy of class representation." *Id.* at 960. In *Murray v. GMAC*, 434 F.3d 948, 952 (7th Cir. 2006), a $3,000 payment to the class representative when the rest of the class was "frozen out" from material financial recovery made the settlement "untenable" because the disproportionate payment to the class representative suggested she was not an appropriate class representative. The payment here to

Ms. Fairchild's employer is more than five times that amount—and in *Murray*, the unnamed class members were to receive $950,000, while here they get nothing.

*Rodriguez* ultimately found class notice was adequate, notwithstanding the lack of disclosure of sliding-scale incentive agreements, because "While neither the Settlement Notice nor the settlement agreement discloses the incentive agreements, both show that incentive awards will be sought. In the circumstances this was sufficient to alert class members to follow-up if they had concerns." 563 F.3d at 962. But here, in contrast, there was not sufficient information to alert either class members or the court to the potential Rule 23(a)(4) issue. If a volunteer attorney, just out of law school, had not had the initiative and curiosity to browse a search engine to try to find a connection on the web between the named plaintiffs and the *cy pres* recipients, or had Ms. Fairchild been more circumspect about her web privacy settings, the court would never have been made aware of this material omission in the court filings and class notice.[2]

The district court made a boilerplate finding that notice was reasonable, but gave no explanation for that finding or why the material omission was not fatal.

---

[2] As it is, though the court acknowledged that the omission "may be an issue," (ER 18), it never addressed the conflict of interest, simply making a bare-bones finding that the Plaintiffs "adequately represented the Settlement Class." (ER 5 ¶ 6.)

(ER 6.)  In any event, adequacy of notice is reviewed *de novo*.  *Molski v. Gleich*, 318 F.3d 937, 951 (9th Cir. 2003).

This Court should emphasize the need for candor to the court in requesting preliminary approval of settlement agreements, and for candor to the class in providing notice.  What was effectively a harmless-error rule in *Rodriguez* incentivizes class counsel to attempt to hide the ball from the court and their putative clients.  But even under the impermissibly lenient standards of *Rodriguez*, which directly contradicted the mandatory command of Fed. R. Civ. Proc. 23(e)(3) without mentioning that rule, the notice in this case was inadequate because it did not forthrightly "describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate."  563 F.3d at 962.  The lack of adequate notice of the conflict of interest provides an independent reason for this Court to reverse the approval of the settlement and further demonstrates the need for adherence to the demanding standards of *Six Mexican Workers*.  *See also Molski v. Gleich*, 318 F.3d 937, 952 (9th Cir. 2003) (finding notice inadequate when it "misled" class members).

Given the potential problems of *cy pres* distributions discussed in this brief, this Court should establish a bright-line rule that class notice—and motions for preliminary approval of settlement—must disclose all relationships between proposed *cy pres* recipients, plaintiffs, defendants, and counsel to the parties as a

matter of law, since apparently ethical precepts requiring candor to the court are insufficient to achieve this result.

## CONCLUSION

*Cy pres* distributions are "an invitation to wild corruption of the judicial process." *See* Liptak, *supra* (quoting NYU Law Professor Samuel Issacharoff). They present dramatic ethical problems and conflicts of interest, including the possibility of mandatory 28 U.S.C. § 455 recusals. The Ninth Circuit may wish to reevaluate whether *cy pres* distributions, as opposed to escheat under 28 U.S.C. § 2042, are to be permitted at all. But if the Court is inclined to continue to allow *cy pres* distributions, it should, at a minimum, continue to apply the *Six Mexican Workers* standard and insist that district courts do the same.

The parties proposed and the district court approved an unfair settlement without even attempting to justify it under the *Six Mexican Workers* standard or providing a reason why that standard should not apply. This Court should reverse the approval of the settlement as an abuse of discretion, and should instruct the district court on remand that any future class notice must disclose all relationships between the parties, the attorneys, and any proposed new *cy pres* beneficiaries.

Dated:  July 20, 2010

Respectfully submitted,

*/s/ Theodore H. Frank*
Theodore H. Frank
CENTER FOR
CLASS ACTION FAIRNESS
1718 M Street NW
No. 236
Washington, DC 20036
Telephone:  (703) 203-3848
Email:  tfrank@gmail.com

Attorney for Objector-Appellant

## STATEMENT OF RELATED CASES
## PURSUANT TO NINTH CIRCUIT RULE 28-2.6

Appellant is not aware of any related cases pending in this Court.


Dated: July 20, 2010

Respectfully submitted,

*/s/ Theodore H. Frank*
Theodore H. Frank
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW
No. 236
Washington, DC 20036
(703) 203-3848
Attorney for Objector-Appellant

**CERTIFICATE OF COMPLIANCE WITH
FED. R. APP. 32(a)(7)(C) AND CIRCUIT RULE 32-1
FOR CASE NO. 10-55129**

Certificate of Compliance with Type-Volume Limitation, Typeface
Requirements, and Type Style Requirements:

1. This brief complies with the type-volume limitation of Fed. R. App. P.
   32(a)(7)(B) because:
   This brief contains **6,884** words, excluding the parts of the brief
   exempted by Fed. R. App. P.  32(a)(7)(B)(iii).
2. This brief complies with the typeface requirements of Fed. R. App. P.
   32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)
   because:
   This brief has been prepared in a proportionally spaced typeface using
   Microsoft Office Word 2003 in 14-point Times New Roman font.


Dated:  July 20, 2010          /s/ *Theodore H. Frank*
                               Theodore H. Frank
                               **CENTER FOR CLASS ACTION
                               FAIRNESS**
                               1718 M Street NW
                               No. 236
                               Washington, DC 20036
                               (703) 203-3848
                               Attorney for Objector-Appellant

## CERTIFICATE OF SERVICE
## CM/ECF FILING/SERVICE
U.S. Court of Appeals Docket No.: 10-55129

I, Theodore H. Frank, hereby certify that on July 20, 2010, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system. We have mailed the foregoing document by First Class Mail to the non-CM/ECF participants.

Dated: July 20, 2010

*/s/ Theodore H. Frank*
Theodore H. Frank
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW
No. 236
Washington, DC 20036
(703) 203-3848
Attorney for Objector-Appellant